## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **CONNIE MOEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-15-756-M** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## AMENDED REPORT AND RECOMMENDATION

On August 17, 2016, the undersigned entered a Report and Recommendation in this case. This Amended Report and Recommendation supersedes and replaces that prior document in all respects.

Plaintiff Connie Moen brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. United States District Judge Vicki Miles-LaGrange has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record (Doc. No. 10, hereinafter "R. __").[1] The parties have briefed

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

their positions, and the case is now ready for decision.  For the reasons set forth below, the undersigned recommends that the Commissioner's decision be affirmed.

## PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on October 13, 2010, alleging a disability onset date of May 1, 2004, and a date last insured of December 31, 2010.  R. 256-59, 306-08.  Following denial of Plaintiff's application initially and on reconsideration, a hearing was held before an Administrative Law Judge ("ALJ"), during which Plaintiff, a medical expert ("ME"), and a vocational expert ("VE") all testified.  R. 46-81, 84-88, 90-92.  At the hearing, Plaintiff amended her alleged disability onset date to May 31, 2005.  R. 49-50.  The ALJ issued an unfavorable decision on January 10, 2014.  R. 10-17.  The SSA Appeals Council denied Plaintiff's request for review, making the ALJ's unfavorable decision the final decision of the Commissioner.  R. 1-4; *see also* 20 C.F.R. § 404.981.  This action for judicial review followed.

## ADMINISTRATIVE DECISION

The Commissioner uses a five-step sequential evaluation process to determine eligibility for disability benefits.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); 20 C.F.R. §§ 404.1520, 1520(a)(4).  At step one, the ALJ found that Plaintiff last met the insured status requirements on December 31, 2010 ("date last insured" or "DLI") and had not engaged in substantial gainful activity from May 31, 2005, the alleged onset date, through her date last insured.  R. 12; *see* 20 C.F.R. §§ 404.131, .321, .1571.  At step two, the ALJ determined that through her date last insured, Plaintiff had the severe impairments of diabetes mellitus and degenerative disc disease.  R. 12-13; *see* 20 C.F.R.

§ 404.1520(c). At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 13; *see* 20 C.F.R. § 404.1520(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her impairments. R. 13-17; *see* 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ found that Plaintiff had the RFC to "lift and carry 20 pounds occasionally and 10 pounds frequently" and "stand and/or walk 6 hours total in an 8-hour day," subject to the additional limitations that Plaintiff can "sit 6 hours total in an 8-hour day," "must avoid even moderate exposure to extreme temperatures," and can "never climb ladders, ropes or scaffolds and only occasionally crawl." R. 13-14; *see* 20 C.F.R. § 404.1567(b) (defining "light work"); SSR 83-10, 1983 WL 31251, at *5-6 (1983) (same). At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a cafeteria manager or office manager. R. 17; *see* 20 C.F.R. § 404.1565. On that basis, the concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, at any time from May 31, 2005, through December 31, 2010. R. 17; *see* 20 C.F.R. § 404.1520(g).

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760

(10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

Plaintiff contends that multiple errors require reversal of the Commissioner's denial of benefits: (1) failure to develop the evidence; (2) lack of substantial evidence to support the RFC; (3) failure to consider Plaintiff's obesity in combination with other impairments; (4) failure to make a proper assessment of Plaintiff's credibility; (5) failure to make required findings regarding Plaintiff's past relevant work ("PRW"); and (6) erroneous delegation of fact-finding responsibilities to the VE. *See* Pl.'s Br. (Doc. No. 12) at 6-27.

A. *Whether the ALJ failed to develop the evidence*

Plaintiff's initial hearing was scheduled for May 8, 2013. R. 18-34. Plaintiff appeared but requested that the full hearing be postponed until she could obtain an

attorney.  R. 27. During that hearing, the ALJ explained to Plaintiff the importance of gathering additional medical records for her file, particularly those that were relevant to the time period prior to her DLI.  *See* R. 29, 31.  At the next hearing, on July 17, 2013, Plaintiff again appeared but requested that the full hearing be postponed until she could obtain an attorney.  R. 35-45.  During that hearing, the ALJ reiterated to Plaintiff the need for her to obtain her missing medical records.  *See* R. 40, 43, 44.  Plaintiff did not indicate at either hearing that she was having difficulty obtaining her medical records. *See* R. 18-45.

Plaintiff and her attorney appeared before the ALJ on September 16, 2013.  R. 46-77.  At this hearing, the ALJ admitted into the record Exhibits 1F to 11F and discussed her previous conversations with Plaintiff regarding the need for additional relevant medical records.  R. 49.  Plaintiff's attorney informed the ALJ that he had only realized that day that Plaintiff's workers' compensation file, which included "MRI evidence, CP evidence, and additional x-ray evidence that I think might have been helpful," had not been provided to the SSA.  R. 54.  After expressing her frustration with Plaintiff's attorney for not "check[ing] on this earlier," the ALJ noted for the record that "we should have had these."  R. 54-55.  When asked by the ALJ if he had the records, Plaintiff's attorney responded "I do," and the ALJ expressly gave Plaintiff's attorney until the end of that week to provide those records to her, at which time she would forward them to the ME along with interrogatories.  R. 55, 57, 77.  The ME also noted his frustration with the lack of medical records, explaining that the information provided by an MRI and detailed neurological examinations would be important to his review.  R. 56-57.

Subsequently to the hearing, Plaintiff submitted additional medical records (Exhibits 12F to 20F), which were forwarded to the ME with interrogatories by the ALJ. R. 13, 650.[2] One of the interrogatories queried: "Is there sufficient objective evidence to enable you to form an opinion about the claimant's medical condition?" R. 650. The ME responded "YES." *Id.* The ALJ provided the interrogatory responses to Plaintiff and her attorney and gave Plaintiff the opportunity to respond or request a supplemental hearing prior to the responses being entered into the record. R. 372-73. The record does not reflect that Plaintiff submitted a response or made such a request.

Plaintiff now asserts that the ALJ erred because she failed "to properly develop the record, even after the [ME]—that the ALJ gave great weight to—told her she needed to." Pl.'s Br. at 6. Relying on the ME's comments during the hearing, Plaintiff argues that "the record was inconclusive" and that the ALJ failed to fulfill her duty to develop the evidence. *Id.* at 6 (citing R. 56-57), 8.

An ALJ "bears responsibility for ensuring that an adequate record is developed during the disability hearing consistent with the issues raised." *Branum*, 385 F.3d at 1271 (internal quotation marks omitted). That responsibility, however, is not the ALJ's alone; rather, the claimant also "has an obligation to assist the ALJ in [his or her] duty." *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). "The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability." *Branum*, 385 F.3d

_____

[2] Exhibits 1F-11F were admitted into the record at the hearing. R. 49. The ME's answers to the interrogatories (Exhibit 21F) were based on Exhibits 1F-20F. *See* R. 652.

at 1271. Indeed, it remains the claimant's burden to "submit all evidence known to [her] that relates to whether or not [she is] . . . disabled." 20 C.F.R. § 404.1512(a); *see also* 20 C.F.R. § 404.1516 ("If you do not give us the medical and other evidence that we need and request, we will have to make a decision based on information available in your case."); *Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." (citing 42 U.S.C. § 423(d)(5))); *cf. Maes*, 522 F.3d at 1096-97 (finding that ALJ's duty to develop the record did not permit claimant's attorney to "ma[k]e no effort" regarding additional evidence and "to rest on the record" then "later fault the ALJ for not performing a more exhaustive investigation"). Here, Plaintiff fails to acknowledge her own responsibility to provide her medical records to the SSA and seeks to shift the blame to the ALJ for her attorney's and her failure to timely submit any such evidence.

Moreover, Plaintiff's argument that "the record was inconclusive," and thus triggered the ALJ's duty to further develop the evidence, misstates the facts. To the extent the record was incomplete at the time of the hearing, the ALJ recognized the need for additional medical records and met her "responsibility for ensuring that an adequate record is developed" by expressly permitting Plaintiff's attorney to provide the missing records before closing Plaintiff's file *See* R. 57, 77; *Branum*, 385 F.3d at 1271. Plaintiff argues that, in his response to the post-hearing interrogatories, the ME "reiterated" his position that additional medical evidence was necessary. Pl.'s Br. at 6, 8. In fact, however, once he was in receipt of the later-submitted medical evidence, the ME clearly

stated that he had sufficient objective evidence to enable him to form an opinion about Plaintiff's medical condition, and he then provided such opinion to the ALJ. *See* R. 650, 652; *see also* R. 13. Though an ALJ may need to order a consultative examination to further develop evidence if the medical evidence in the record is inconsistent, or the evidence as a whole is insufficient to allow the ALJ to make a determination on the claim, Plaintiff has not shown that such was the case here. *See Hawkins v. Chater*, 113 F.3d 1162, 1166-67 (10th Cir. 1997) (citing prior version of 20 C.F.R. §§ 404.1512(e), .1519a); 20 C.F.R. §§ 404.1512(e), .1519a(b). Because no further medical evidence was required, Plaintiff's argument that the ALJ erred in failing to develop the record is wholly without merit.

B. *Whether the ALJ's RFC determination is supported by substantial evidence*

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to include limitations related to Plaintiff's severe impairments of diabetes mellitus, degenerative disc disease, and shoulder and wrist pain. *See* Pl.'s Br. at 9, 10-14.

"The mere presence of a condition is not necessarily disabling. Rather, a condition, alone or in combination with other impairments, must render claimant unable to engage in any substantial gainful employment." *Walters v. Colvin*, 604 F. App'x 643, 648 (10th Cir. 2015) (alteration and internal quotation marks omitted); *see also* SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). And it is Plaintiff's burden to provide evidence of limitations and restrictions caused by her medically determinable impairments. *See supra* Part A; *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir.

2005).  Plaintiff, however, has not established any functional limitations or restrictions that the ALJ improperly failed to include in the RFC.

1. Diabetes

Plaintiff refers to her diabetes mellitus impairment as "brittle" diabetes[3] and argues that this condition causes functional limitations of "nausea and vomiting, abdominal pain, confusion, and weakness or fatigue."  Pl.'s Br. at 12-13.  As an initial matter, there is no evidence of this specific diagnosis, and none of the medical records— aside from repeating Plaintiff's own self-reports—describe Plaintiff's diabetes as "brittle."  *See* R. 384, 396, 398, 399, 401, 405, 410, 412, 413, 414, 415, 417, 432, 434, 438, 439, 482, 483, 484, 486, 487, 489, 491, 494, 511, 514, 524, 527, 528, 540, 550, 577, 583, 609, 613, 621, 634, 647.  Evidence from an acceptable medical source is required to establish a medically determinable impairment, and Plaintiff has not pointed to such evidence or established the impairment of brittle diabetes.  *See* 20 C.F.R. § 1513(a).

Nor has Plaintiff established that her diabetes causes any functional limitations that the ALJ improperly excluded from the RFC.  Plaintiff discusses medical records for three instances in which Plaintiff was hospitalized and argues that symptoms as observed during those hospitalizations should have "show[n] up in the RFC."  Pl.'s Br. at 13.

---

[3] "[T]he term 'brittle diabetes' is reserved for those cases [of type 1 diabetes] in which the instability [of the condition], whatever its cause, results in disruption of life and often recurrent and/or prolonged hospitalization."  MC Vantyghem & M Press, Abstract, *Management Strategies for Brittle Diabetes*, 67 Annales d'Endocrinologie 287 (2006) (Fr.), *available at* http://www.ncbi.nlm.nih.gov/pubmed/17072232 (last visited Aug. 15, 2016).

The record indicates that Plaintiff was hospitalized from July 17 to July 21, 2010, with complaints of suffering for several days from nausea, vomiting, and abdominal pain that occurred after eating with a companion, who developed the same symptoms.  R. 514; *see generally* R. 511-20.  Plaintiff's final diagnosis was e-coli urinary tract infection with sepsis and bacteremia; diabetic ketoacidosis, now resolved; diabetes mellitus, uncontrolled; acute kidney injury due to dehydration, now improved; accelerated hypertension; tobacco abuse; and obesity.  R. 511-12.  On July 23, 2010, Plaintiff visited the emergency room with complaints of abdominal pain and vomiting; Plaintiff's exam was "unremarkable," and she was discharged.  R. 508-10.

Plaintiff was next hospitalized from August 2 to August 5, 2011.  R. 482-507.  Plaintiff exhibited signs of altered mental status, occasional unresponsiveness, and increased evidence of memory loss.  R. 482.  Plaintiff's Discharge Summary indicated that her "altered mental state may be due to uncontrolled diabetes with a poor diet and episodes of intermittent hypoglycemia or due to use of narcotics given her history of chronic pain."  R. 483-84.

Plaintiff was also hospitalized from March 13 to March 17, 2013.  R. 527-28.  This episode occurred more than two years after Plaintiff's DLI but is relevant as indirect evidence of Plaintiff's condition during the insured period.  *See Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 479 (10th Cir. 1993).  Plaintiff presented to the emergency room "because her physician told her that she had ketones in her urine and that her [blood] sugar was very high."  R. 527; *see generally* R. 521-600.  Plaintiff, however, "denie[d] any weakness, change in mental status, abdominal pain, nausea, vomiting, or

diarrhea."  R. 527; *see also* R. 528 ("Positive vomiting x1 episode.  Negative abdominal pain.  Negative nausea . . . . / Negative . . . weakness, dizziness.").

The medical records for these incidents reflect that Plaintiff has had isolated episodes of nausea, vomiting, abdominal pain, confusion, weakness, and fatigue.  They do not indicate that such episodes caused significant or ongoing limitations or restrictions.  Nor has the undersigned found other medical evidence in the record that would support diabetes-caused limitations or restrictions other than those that the ALJ included in the RFC.[4]  As such, the ALJ did not err by not including in Plaintiff's RFC additional restrictions or limitations due to Plaintiff's diabetes, and the RFC is not undermined by this omission.  *See Adams v. Colvin*, 553 F. App'x 811, 814-15 (10th Cir. 2014) ("The problem with [claimant's] argument [that the ALJ failed to include any restrictions related to his severe impairment] is that the record indicates no functional limitation as a result of [that impairment]."); *cf. Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004) (finding there was no medical evidence regarding claimant's claimed limitation that contradicted the ALJ's RFC); *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (finding that an ALJ need not account for a limitation belied by the record when setting an RFC).[5]

---

[4] The record does support limiting Plaintiff from even moderate exposure to extreme heat due to her diabetes and obesity as recommended by the ME, a restriction the ALJ included in the RFC.  *See* R. 13, 53, 652.

[5] Plaintiff alleges in a parenthetical that the ALJ "never mentioned" her hospitalizations.  Pl.'s Br. at 12.  Because the medical records related to the above-discussed hospitalizations are not indicative of significant or ongoing limitations or restrictions, they were not significantly probative and the ALJ was not required to discuss them.  *See*

2.  Degenerative Disc Disease

Plaintiff argues, "Although the ALJ found that [Plaintiff's] diabetes and degenerative dis[c] disease were severe impairments, she failed to include proper limitations related to either of the conditions in [Plaintiff's] RFC."  Pl.'s Br. at 11. Plaintiff further argues that "the ALJ should explain how [Plaintiff's] unchallenged evidence related to her problems with brittle diabetes, and her degenerative dis[c] disease[,] translates to the ability to perform work with no corresponding reaching and handling limitations or limitations to her neck and shoulder."  *Id.* at 12.  Finally, in a later section of her brief, Plaintiff returns to this argument and contends that, because Plaintiff's physicians "noted her pain for the same conditions the ALJ found severe," the ALJ should have included limitations for sitting, breaks, and walking "due to the severe back and diabetic impairments noted previously."  *Id.* at 21-22.[6]

---

*Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (requiring ALJ to discuss reasons for rejecting evidence provided such evidence is "significantly probative"); *see also Mendez v. Colvin*, 588 F. App'x 776, 780 (10th Cir. 2014) (finding no error when ALJ did not discuss plaintiff's claims of fatigue as "those claims were not significantly probative because [plaintiff's] symptoms had resolved"); *Shiplett v. Astrue*, 456 F. App'x 730, 734 (10th Cir. 2012) (finding medical records that did not "contradict the ALJ's RFC assessment" did not constitute significantly probative evidence the ALJ was required to discuss).

[6] Within this later section of her brief, Plaintiff makes the additional argument that the ALJ "only looked at the naked individual impairments, without properly considering the combination of impairments."  Pl.'s Br. at 22.  Plaintiff references "step two" in her argument but does not articulate any specific error in the step-two analysis.  *See id.*  This contention is disregarded as insufficiently presented for review.  *See Mays v. Colvin*, 739 F.3d 569, 575-76 (10th Cir. 2014) (declining to consider arguments that were not adequately developed).  To the extent Plaintiff argues that the ALJ did not properly consider Plaintiff's impairments in combination with each other when determining her RFC, the ALJ specifically stated that she considered Plaintiff's impairments both

There are two problems with Plaintiff's argument. First, the ALJ limited Plaintiff to performing light work, and further limited her to never climbing ladders, ropes, or scaffolds, and only occasionally crawling. R. 13-14. In doing so, the ALJ did include in the RFC limitations resulting from Plaintiff's degenerative disc disease that were supported by the record. *See* R. 13-17; *see also* R. 456-63 (Physical RFC Assessment by state agency medical consultant indicating that Plaintiff can perform light exertional activity); R. 465 (affirmation by state agency medical consultant's conclusion that Plaintiff can perform light exertional activity); R. 652 (affirmation by ME of state agency medical consultant's conclusion that Plaintiff can perform light exertional activity).

Second, Plaintiff has pointed to nothing in the record demonstrating that her degenerative disc disease causes greater functional limitations than those the ALJ assessed. *See* Pl.'s Br. at 10-14, 21-23. Absent support in the record for the limitations now claimed by Plaintiff, the ALJ did not err by failing to include those limitations in the RFC assessment. *See Maestas v. Colvin*, 618 F. App'x 358, 361 (10th Cir. 2015) (finding RFC analysis was supported by substantial evidence when claimant failed to cite anything "specific in the medical records to support his alleged functional limitations"

---

singularly *and* in combination and Plaintiff points to no convincing reason to find otherwise. *See, e.g.*, R. 13 (finding that Plaintiff "does not have an impairment *or combination of impairments* that meets or medically equals" a Listing (emphasis added)), 14 (stating that "all symptoms" were considered in reaching the RFC); *Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988) (rejecting claimant's argument that ALJ did not consider combined effect of impairments when ALJ addressed "various impairments" and appellate court found "nothing to suggest they were not properly considered"); *cf. Wall*, 561 F.3d at 1070; (stating when an "ALJ indicates [she] has considered all the evidence[,] our practice is to take the ALJ at [her] word" (alteration and internal quotation marks omitted)).

and ALJ had found that claimant's "own assessment of his limitations lacked credibility"); *Howard*, 379 F.3d at 948 (rejecting a lack-of-substantial-evidence argument when claimant presented no evidence contradicting an RFC for light work).

### 3. Shoulder and Wrist

Plaintiff also argues that the RFC should have included limitations related to her shoulder impairment and carpal tunnel release surgery. Pl.'s Br. at 13. As support for her position, Plaintiff cites to a September 2007 orthopedic worker's compensation report from J. Calvin Johnson, MD. *See id.* (citing R. 602). Dr. Johnson limited Plaintiff to medium exertion work, lifting no more than 30 pounds, and reaching overhead only occasionally. R. 602. Plaintiff also cites to an April 2009 worker's compensation report from Lance Rosson, DO, who found Plaintiff had a limited range of motion in her left shoulder. Pl.'s Br. at 13 (citing R. 628).

As noted, the ALJ limited Plaintiff to light work, including lifting 20 pounds occasionally and 10 pounds frequently, and also found several postural limitations. R. 13-14. Thus, the only potential *additional* limitation suggested by the cited reports is that the RFC should have included a restriction on overhead reaching. There is substantial additional evidence, however, to support the ALJ's RFC determination. For instance, as noted by the ALJ, other medical records reflected that Plaintiff was observed to show no significant restriction on use of the shoulders. *See* R. 16, 388, 391, 394, 397, 400, 404, 433; *see also* R. 488 ("The patient has very slight crepitus upon manipulation of her left shoulder, otherwise does not appear to have any major movement restriction."); R. 601 ("She is noted to move her shoulder about rather freely and I can

run her through the full range of motion without any evidence of restriction or pain."); R. 647 ("Range of motion in bilateral shoulders is full and pain free."). Further, in June 2009, LeRoy E. Young, DO, indicated that Plaintiff's range of motion in her left shoulder was greater than that found by Dr. Rosson. *Compare* R. 628, *with* R. 638. Dr. Young also opined that Plaintiff had "sustained no permanent partial impairment to the cervical spine, left shoulder, left arm, or left hand." R. 638. He further opined that Plaintiff's "period of temporary total disability has long since ended and she may return to employment" and that "[s]he is in no further need of medical care or medical maintenance." R. 639; *cf.* 20 C.F.R. § 404.1527(d) (prescribing that "all medical findings and other evidence that support a medical source's statement that you are disabled" will be reviewed although the source of an opinion that a claimant is disabled is not given "special significance)". Finally, the state agency medical consultant found that there were no manipulative limitations established for Plaintiff, and this opinion was affirmed by a second state agency medical consultant as well as the ME. R. 459, 465, 652. As such, the record contains support for both the notion that Plaintiff was limited in her ability to reach overhead, and for the notion that she was not. The ALJ was entitled to resolve such evidentiary conflicts and did so. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016).

Similarly, with respect to her left wrist, Plaintiff points to a January 2008 workers' compensation report from Richard Ruffin, MD, "releas[ing] [Plaintiff] with limited repetitive use of the left wrist." Pl.'s Br. at 13 (citing R. 616). Though not cited by Plaintiff, the undersigned notes that Dr. Rosson's April 2009 workers' compensation

report also indicates that Plaintiff had reduced range of motion in her left wrist, positive Tinel's sign, and "a permanent partial impairment of 40% to the left hand." *See* R. 630-31. Other medical evidence, however, indicates that Plaintiff's left-wrist issues were not significantly limiting. For instance, in June 2009, Dr. Young indicated that Plaintiff's range of motion in her left wrist was greater than that found by Dr. Rosson. *Compare* R. 628, *with* R. 638. Dr. Young also found that Plaintiff had negative Tinel's and Phalen's signs and opined that Plaintiff had sustained only a "five (5) percent permanent partial impairment to the left hand." R. 638; *see also* R. 609-10 (Dr. Johnson's March 8, 2007 workers' compensation report stating that Plaintiff indicated left-hand numbness and tingling had improved and including no restrictions on repetitive hand or wrist movement); R. 459, 465, 652 (state agency medical consultant's finding that there were no manipulative limitations, affirmed by second state agency medical consultant and by the ME). Thus, there is substantial evidence to support the ALJ's conclusions and RFC determination, and to the extent there are evidentiary conflicts in the record they were for the ALJ to resolve. *See Bell v. Colvin*, No. 15-3161, 2016 WL 1381779, at *4 (10th Cir. Apr. 7, 2016); *Allman*, 813 F.3d at 1333; *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1172 (10th Cir. 2012).

### C. Whether the ALJ Properly Considered Plaintiff's Obesity

Finally, Plaintiff argues that the ALJ erred by not "discuss[ing] [Plaintiff's] weight or its impact on her ability to perform work." Pl.'s Br. at 25-27. As Plaintiff notes, Social Security Ruling 02-1p, 2002 WL 34686281 (Sept. 12, 2002) (Titles II & XVI: Evaluation of Obesity), requires an ALJ to consider the effects of obesity throughout the

sequential evaluation process. *See* Pl.'s Br. at 26. The ruling instructs that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02-1p, 2002 WL 34686281, at *1. Nevertheless, an ALJ may "not make assumptions about the severity or functional effects of obesity combined with other impairments," but, rather, must "evaluate each case based on the information in the case record." *Id.* at *6.

Here, Plaintiff has set forth no functional limitations caused by Plaintiff's obesity—alone or in combination with other impairments—other than the general statement that "[o]besity is a known limitation of movement of the body." *See* Pl.'s Br. at 26. Nor has the undersigned's review of the record found support for the suggestion that Plaintiff's obesity limited her ability to work beyond the limitations imposed by the ALJ. Indeed, as the ALJ noted, the ME's testimony included that there was a "lack of evidence to establish loss of fine and gross movements in both upper extremities" and that there was "evidence of normal gait." R. 13; *see also* R. 652.

The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. *See Walters*, 604 F. App'x at 648; *Madrid v. Astrue*, 243 F. App'x 387, 392 (10th Cir. 2007). Plaintiff did not include obesity as one of the "physical or mental conditions . . . that limit [her] ability to work" in her DIB application, did not mention obesity as a problem in her Adult Function Report, did not mention obesity in her hearing testimony, and has not included in her brief any citations to the record demonstrating that her obesity has any functional effect on her. *See* R. 48-77,

309-16, 320-27; Pl.'s Br. at 6-27.  Instead Plaintiff merely argues that her obesity "might impact" her RFC.  *See* Pl.'s Br. at 26.

As noted above, "an ALJ cannot *assume* a functional deficit."  *Smith v. Colvin*, 625 F. App'x 896, 899 (10th Cir. 2015) (citing SSR 02-1p, 2002 WL 34686281, at *6). Moreover, when no evidence supports a finding of additional functional limitations caused by a claimant's obesity, the ALJ is not required to specifically note the absence of such evidence when formulating the claimant's RFC; nor is the ALJ required to specifically mention obesity in the RFC determination.  *See id.*; *Rose v. Colvin*, 634 F. App'x 632, 637 (10th Cir. 2015).  Plaintiff "points to no medical evidence indicating that her obesity resulted in functional limitations.  Moreover, her hearing testimony did not describe limitations due to obesity. . . . . Therefore, 'the factual record does not support [Plaintiff's] position that her obesity, either alone or in combination with other conditions, precludes her from performing [a limited range of light] work."  *See Rose*, 634 F. App'x at 637 (quoting *Howard*, 379 F.3d at 948).  Thus, Plaintiff has not shown that the ALJ's consideration of Plaintiff's obesity did not comply with legal standards or that, as relevant to that condition, the ALJ's RFC determination was not supported by substantial evidence.  *See Rose*, 634 F. App'x at 637; *Smith*, 625 F. App'x at 899; *Bales v. Colvin*, 576 F. App'x 792, 800 (10th Cir. 2014).

### D.  Whether the ALJ properly determined Plaintiff's credibility

Plaintiff next asserts that the ALJ failed to properly evaluate Plaintiff's credibility, arguing that the ALJ "did not properly apply the well-respected credibility factors," but

instead relied on a "bald, unsupported conclusion that [Plaintiff] exaggerated her subjective complaints."  Pl.'s Br. at 19-25.

The assessment of a claimant's RFC generally requires the ALJ to make findings regarding the credibility of testimony describing "the intensity, persistence, and functionally limiting effects of. . . symptoms," such as pain and other subjective complaints, that are associated with the claimant's medically determinable impairments. *See* SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996); *Wilson v. Astrue*, 602 F.3d 1136, 1144-45 (10th Cir. 2010).  The ALJ is required to closely and affirmatively link her credibility findings to substantial evidence in the record and to include "specific reasons" for such findings.  *See Wilson*, 602 F.3d at 1144; *Qualls*, 206 F.3d at 1372; SSR 96-7p, 1996 WL 374186, at *4.  "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence."  *Wilson*, 602 F.3d at 1144 (internal quotation marks omitted).  Credibility findings must "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Id.* (internal quotation marks omitted).

The ALJ should consider certain factors[7] in evaluating a claimant's credibility.  *Id.* at 1145. An ALJ is not, however, required to make a formal, "factor-by-factor recitation

---

[7]  The Tenth Circuit set forth a list of factors that should be considered in assessing the credibility of subjective complaints, including:

the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and

of the evidence," as long as the ALJ "sets forth the specific evidence [she] relies on in evaluating the claimant's credibility." *Keyes-Zachary*, 695 F.3d at 1167 (internal quotation marks omitted).

The ALJ's analysis meets these standards. The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in [the ALJ's] decision." R. 15. The ALJ then provided specific reasons for this credibility assessment, all of which support her findings that Plaintiff's impairments did not cause disabling functional limitations. *See* R. 13-17.

The ALJ first relied upon the medical evidence in the record and the treatment that Plaintiff had received. R. 13-14, 15-16 (citing Exs. 1F-4F, 10F, 12F-18F). She reviewed Plaintiff's medical history both at step two of the analysis and at step four and also stated that she had considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and "opinion evidence." *See* R. 13-16. The ALJ also discussed Plaintiff's statements regarding her current symptoms, condition, and activities of daily living. R. 15 (citing hearing testimony). The ALJ relied upon the SSA's medical consultants and, primarily, the ME. R. 12-13, 16-17 (citing hearing testimony by the ME, interrogatories

---

relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Wilson*, 602 F.3d at 1145 (internal quotation marks omitted); *see also* SSR 96-7p, 1996 WL 374186, at *3.

from the ME (Ex. 21), and Exhibits 6F and 8F). Finally, the ALJ discussed the workers' compensation evaluations and their inconsistencies. R. 16-17 (citing Exs. 17-18). These were all reasons that the ALJ could validly rely upon to find that Plaintiff's subjective complaints were not fully credible. *See* 20 C.F.R. §§ 404.1529(c)(2) (evaluation of symptoms includes consideration of objective medical evidence), .1529(c)(3)(i) (evaluation of symptoms includes consideration of a claimant's activities), .1529(c)(3)(ii) (evaluation of symptoms includes consideration of frequency of symptoms), .1529(c)(3)(iv) (evaluation of symptoms includes consideration of effectiveness of medication), .1529(c)(3)(v) (evaluation of symptoms includes consideration of treatment received), .1529(c)(4) (evaluation of symptoms includes consideration of inconsistencies, including inconsistencies with medical evidence).

Plaintiff complains that the ALJ made too much of Plaintiff's testimony regarding her "current" abilities. *See* Pl.'s Br. at 20. But that testimony is only one factor cited by the ALJ as supporting her credibility assessment. Moreover, the ALJ clearly noted that Plaintiff testified that "[h]er condition improved by about 2007. She no longer had to wear the big t-shirts and could do things around the house. She improved to the point she is now." R. 15; *see also* R. 68-69. Plaintiff's description of her current condition, symptoms, and activities speaks to at least part of the alleged disability period, and the ALJ's decision indicates she was aware of and considered improvements by Plaintiff during that period.

Plaintiff relatedly contends that the ALJ did not properly consider Plaintiff's pain, arguing that "while the ALJ referenced some pain management records, it had no effect

on the RFC that she found." Pl.'s Br. at 21-25. Specifically, Plaintiff argues that, because Plaintiff's doctors "noted her pain for the same conditions the ALJ found severe," the ALJ should have included restrictions for sitting, breaks, and walking "due to the severe back and diabetic impairments noted previously." Pl.'s Br. at 21-22. The ALJ, however, noted Plaintiff's complaints of pain several times, as well as treatment Plaintiff received for pain. *See* R. 15-16. The ALJ also accurately noted Plaintiff's testimony that she was "released from pain management" and "does not take any medication for pain," as well as medical records indicating that Plaintiff's pain had improved. *See* R. 15, 16. Ultimately, the ALJ partially credited Plaintiff's complaints of pain, finding that Plaintiff's diabetes and degenerative disc disease resulted in certain exertional and postural limitations and including those in the RFC. R. 17; *see also* R. 13-14. Although Plaintiff desires that the Court weigh the evidence differently, that is not the Court's role on substantial-evidence review. *See Bowman*, 511 F.3d at 1272.

The ALJ's credibility determination followed proper legal standards and was supported by substantial evidence in the record. *See Hackett*, 395 F.3d at 1173 (finding that credibility determinations are peculiarly the province of the fact-finder and will not be upset when supported by substantial evidence).

E. *Whether the ALJ erred at phases two and three of the step-four analysis*

At step four of the sequential evaluation process, an ALJ compares a claimant's RFC "with the physical and mental demands of [the claimant's] past relevant work" in

order to determine if the claimant can perform that PRW.[8]  *See* 20 C.F.R. § 404.1520(f).

This analysis requires the ALJ to make specific factual findings as to: (1) the claimant's

RFC; (2) the physical and mental demands of the claimant's PRW, to the extent that

those demands "have a bearing on the medically established limitations" in the RFC; and

(3) whether the claimant's RFC permits him or her to return to PRW.  *See* SSR 82-62,

1982 WL 31386, at *3-4 (1982); *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).

If this three-phase analysis reflects that a claimant retains the RFC to perform either (1)

"[t]he actual functional demands and job duties of a particular past relevant job"; or (2)

"[t]he functional demands and job duties of the occupation as generally required by

employers throughout the national economy," then the claimant will be found to be "not

disabled."  SSR 82-61, 1982 WL 31387, at *2 (1982); *see also Andrade v. Sec'y of

Health & Human Servs.*, 985 F.2d 1045, 1050-52 (10th Cir. 1993).

Plaintiff argues that at phases two and three of the step-four analysis the ALJ

erroneously delegated her responsibilities to make specific findings to the VE.  *See* Pl.'s

Br. at 14-16, 17-18.  Plaintiff also asserts that, at phase two, the ALJ failed to specify

whether Plaintiff could perform her PRW as a cafeteria manager as she actually

performed it or as it was generally performed in the national economy.  *Id.* at 16.  Finally,

Plaintiff contends that the ALJ's determination that Plaintiff could perform her PRW as a

---

[8]  "Past relevant work is work that you have done within the past 15 years, that was
substantial gainful activity, and that lasted long enough for you to learn to do it."  20
C.F.R. § 404.1560(b)(1).

cafeteria manager was error because Plaintiff had previously worked as a cook, not as a cafeteria manager. *Id.* at 16-17.[9]

1. Delegation to the VE

In making a phase-two finding, the ALJ may rely upon the claimant's own reporting as to the pertinent demands of past relevant work. 20 C.F.R. §§ 404.1560(b)(2), 404.1565(b); SSR 82-62, 1982 WL 31386, at *3. The ALJ may also rely upon other sources, including the *Dictionary of Occupational Titles* (or "DOT") or the testimony of a VE. *See* 20 C.F.R. § 404.1560(b)(2); *Hayden v. Barnhart*, 374 F.3d 986, 991 (10th Cir. 2004); *Doyal*, 331 F.3d at 761; *Winfrey*, 92 F.3d at 1025. Although the ALJ has an obligation to develop the record sufficiently, the claimant bears the burden of establishing her inability to perform past relevant work. *Hayden*, 374 F.3d at 991; *Andrade*, 985 F.2d at 1051.

In *Winfrey*, the Tenth Circuit reversed the decision of the Commissioner because an ALJ effectively delegated the phase-two and phase-three determinations to a VE. *See Winfrey*, 92 F.3d at 1024-25. The Tenth Circuit explained that, while an ALJ may *rely* on vocational information supplied by a VE, the ALJ may not abandon her role as fact-finder to the VE. *See id.* As part of this obligation, the ALJ must articulate the factual findings underlying her determinations in a way that would allow an appellate court to

---

[9] Plaintiff additionally argues that "the ALJ did not inquire of [Plaintiff] or the VE about the physical demands of her PRW that would have a bearing on" the limitations of not climbing ladders, robes, or scaffolds, or only occasional crawling. Pl.'s Br. at 16. The record shows that the ALJ did question the VE about any impact Plaintiff's postural limitations would have on her ability to perform her PRW. *See* R. 71-72.

review whether the findings are supported by substantial evidence. *See id.* at 1025 ("When . . . the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review.").

The distinction between improper delegation and proper reliance is one of substance, not form. In *Doyal*, the Tenth Circuit rejected the claimant's argument that the ALJ had delegated phases two and three to the VE where the ALJ had "quoted the VE's testimony approvingly, in support of his own findings." *See Doyal*, 331 F.3d at 761. The appellate court explained: "While the ALJ did not use the phrase 'I find' in connection with his conclusion . . . , the form of words should not obscure the substance of what the ALJ actually did." *Id.* (citing *Winfrey*, 92 F.3d at 1025).

The circumstances here are more analogous to *Doyal* than to *Winfrey*. As in *Doyal*, the ALJ at phase one made all of the necessary findings regarding Plaintiff's RFC and included in that RFC all of Plaintiff's limitations that were supported by substantial evidence. *See* discussion *supra*; R. 13-17. *Compare Doyal*, 331 F.3d at 760 (stating that "the ALJ made the RFC findings required by phase one of [the step-four] analysis"), *with Winfrey*, 92 F.3d at 1023-24 (holding that the ALJ's RFC determination did not accurately reflect the claimant's physical or mental limitations). At phase two, the ALJ properly relied on testimony by the VE regarding whether a hypothetical claimant could meet the DOT demands for the occupations of office manager and cafeteria manager, Plaintiff's prior jobs. R. 17, 71-73. At the hearing, the ALJ had examined the VE on this point, referencing the DOT requirements for the two occupations and asking whether,

under various sets of functional limitations, the hypothetical claimant could meet the requirements. R. 71-73. In her decision, the ALJ cited to the VE's testimony and stated her phase-three conclusion that under the RFC as adopted the Plaintiff could perform the jobs in question. R. 17.

This analysis is consistent with *Doyal* and in contrast to *Winfrey*, where the ALJ "made no inquiry into, or any finding specifying" the demands of the claimant's past work. *See Winfrey*, 92 F.3d at 1024; *Doyal*, 331 F.3d at 760-61; *see also Best-Willie v. Colvin*, 514 F. App'x 728, 738 (10th Cir. 2013) (finding no error where the ALJ relied on VE's testimony in support of ALJ's phase-two and phase-three findings); *Barker v. Astrue*, 459 F. App'x 732, 742 (10th Cir. 2012) ("The ALJ based [the conclusion that claimant could perform PRW as generally performed] on a [VE's] response to a hypothetical question involving an individual with an RFC matching [claimant's]. [Plaintiff] has not challenged the [VE's] qualifications[;] nor does she assert that the ALJ improperly interpreted the expert's testimony on this point. Thus, we find no legal error in the ALJ's decision . . . ." (citation omitted)); *Westbrook v. Massanari*, 26 F. App'x 897, 903 (10th Cir. 2002) ("Our holding in *Winfrey* . . . is not designed to needlessly constrain ALJs by setting up numerous procedural hurdles that block the ultimate goal of determining disability. Rather, its concern is with the development of a record which forms the basis of a decision capable of review. . . . The duty is one of inquiry and factual development." (alteration, citation, and internal quotation marks omitted)). The undersigned finds no error in the ALJ's reliance upon the VE's testimony at phases two

and three, and such reliance did not render the ALJ's step-four decision unsupported by substantial evidence.[10]

## 2. Plaintiff's Past Relevant Work as Cafeteria Manager

Plaintiff argues that the ALJ committed at least two errors regarding Plaintiff's PRW as a cafeteria manager. Plaintiff first argues that neither the ALJ nor the VE distinguished between Plaintiff's PRW as a cafeteria manager "as performed" or "as performed pursuant to the DOT." Pl.'s Br. at 16. This is inaccurate. The ALJ's questioning of the VE referenced the DOT requirements for the occupation of cafeteria manager. R. 71. Further, the ALJ in her decision stated that Plaintiff was able to perform the demands of that occupation both "as actually *and* generally performed." R. 17 (emphasis added).

More substantively, Plaintiff argues that the ALJ's determination that Plaintiff could perform her PRW as a cafeteria manager was erroneous because (i) with respect to how that work was actually performed, Plaintiff's description of the physical demands exceeded the RFC (Pl.'s Br. at 16); and (ii) with respect to how the occupation is generally performed, the correct DOT analog was "Cook – institutional" (*Id.* at 16-17 & n.2 (citing DOT 315.361-010)). The law is clear, however, that so long as the ALJ finds that Plaintiff can perform *any* of her past relevant work positions, that is sufficient to support a finding of "not disabled" at step four. *See* SSR 82-61, 1982 WL 31387, at *2;

---

[10] As to phase three, Plaintiff argues that "the ALJ did not conduct an appropriate analysis at a phase two, and therefore, her findings at phase three of the analysis were naturally compromised." Pl.'s Br. at 17. Because the undersigned has found no error in the ALJ's phase-two analysis, this argument fails.

*Wells v. Colvin*, 727 F.3d 1061, 1074 (10th Cir. 2013). Aside from the *Winfrey* challenge discussed and rejected above, Plaintiff does not contest the ALJ's determination that Plaintiff can perform her PRW as an office manager. Accordingly, it is unnecessary to determine whether the ALJ erred in her consideration of Plaintiff's PRW as a cafeteria manager. Even if the ALJ did so err, any such error would not undermine her finding that Plaintiff can perform her PRW as an office manager, which is sufficient to support her conclusion that Plaintiff is not disabled. As such, the Commissioner's final decision that Plaintiff is not disabled because Plaintiff could perform her past relevant work met the relevant legal standards and was supported by substantial evidence.

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned recommends that the decision of the Commissioner be AFFIRMED.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Amended Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by September 2, 2016. The parties are further advised that failure to timely object to this Amended Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Amended Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 19th day of August, 2016.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE